Debra Groberg (ISB#9797)
Nathan Pittman (ISB#9430)
NEVIN, BENJAMIN & McKAY LLP
303 West Bannock
P.O. Box 2772
Boise, Idaho 83701
Telephone: (208) 343-1000
Facsimile: (208) 345-8274
dgroberg@nbmlaw.com
npittman@nbmlaw.com

*Attorneys for Defendant Ryan Bendawald*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:23-CR-281-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANT'S RESPONSE TO** |
| | ) | **GOVERNMENT'S MOTION FOR** |
| RYAN A. BENDAWALD, | ) | **ADMISSION OF EVIDENCE** |
| | ) | **PURSUANT TO FEDERAL RULES OF** |
| Defendant. | ) | **EVIDENCE 413 AND 404(b) [Dkt. 80]** |
| | ) | |
| _____ | ) | |

The indictment against Mr. Bendawald is based on the allegations of seven complainants.

The government now seeks to admit the allegations of seven more complaining witnesses (and two

additional allegations from the existing alleged victims) in order to bolster the allegations in the

indictment. The government's effort to double the number of individuals it gets to call "victims"

at trial appears to be a plain attempt to impress the jury with the sheer number of individuals (out

of the hundreds the government interviewed) who could be convinced to come forward and make

an allegation about Mr. Bendawald, regardless of the content, strength, or reliability of their

allegation. That is not a permissible purpose under Federal Rules of Evidence 413, 404(b), or 403.

The Court should not admit these new allegations because, stripped of the government's

conclusory and unsupported assertions about "harassment" and "stalking," the probative value of these allegations is weak at best and the danger of unfair prejudice is high. Not a single one of the seven alleges Mr. Bendawald solicited sexual favors from them in exchange for consideration on their criminal charges, the core of the government's theory of the indictment. Only two allege sexual contact at all, one of which is a complaint about a police pat down that involved touching over clothing. One of the alleged other victims appears to have significant mental health issues and has very likely mistaken Mr. Bendawald for a different Caldwell Police Department ("CPD") officer who admitted to having sex with her. The allegations of one of the other victims is outright and obviously false, disproven by Mr. Bendawald's body-worn camera footage that the government produced in discovery.

None of the allegations of these other alleged victims is so probative as to warrant the trial time it would take to present and challenge their allegations. The government disclaims an interest in conducting "mini-trials," Mot. at 23, but Mr. Bendawald would be required to confront each of these new "other victims" at trial and seek to disprove their claims as vigorously as he will endeavor to demonstrate the charged allegations are false. That is because the nature of the evidence the government seeks to present, even though it is often little more than vague allegations that do not reach the heart of the conduct alleged in the indictment, is highly and unfairly prejudicial to Mr. Bendawald. It is no secret that the strongest element of the government's case is its ability to claim multiple alleged victims. Seven apparently is not enough, the government asks for fourteen, regardless of the strength (or indeed outright falseness) of their allegations.

These additional allegations are not admissible under Rules 413 or 404(b) and should be excluded under Rule 403. If the Court is not inclined to exclude the evidence based on the briefs alone, it should exercise its discretion to hold an evidentiary hearing so it can fully perform its

obligations under Rules 413, 404(b), and 403.

## BACKGROUND

The government urges the admission of the allegations of the other complainants to show intent, motive, knowledge, and absence of mistake, based on a narrative that Mr. Bendawald engaged in "strikingly similar" conduct with the alleged victims while taking various steps to "cover his tracks." *See* Mot. 1, 12. Because the relevance and materiality of the allegations the government seeks to admit turns on their similarity to the charged conduct, it is necessary to examine the allegations in the indictment to discern whether such a pattern of illegal conduct is alleged, especially when those allegations are considered in context with Mr. Bendawald's role as a CPD officer.

Mr. Bendawald spent most of his career at CPD policing dangerous gangs involved in drug trafficking in the Caldwell community. He was a proactive police officer, meaning he did not just respond to crimes as they occurred, but took an active role in preventing crimes from being committed. As other CPD officers have told the government, Mr. Bendawald was one of the best officers at CPD for spotting criminal activity, and he knew more than anyone else about who was involved in that community, who they were connected with, and what criminal activity was going on. Mr. Bendawald cultivated this knowledge by developing informal sources of information, which often involved catching an individual with a small amount of drugs or paraphernalia and obtaining information in exchange for consideration on those charges.

Mr. Bendawald's proactive policing approach is important when considering the government's conclusory allegations of "stalking" and "harassment." The individuals Mr. Bendawald policed, including the Alleged Victims, were overwhelmingly gang members involved in drugs. Many of them, in particular Alleged Victims 2, 3, 4, and 7 and Other Alleged Victim 1

(henceforth referred to as "OAV1"), had significant gang involvement or criminal connections.  It is not surprising that they would consider Mr. Bendawald pulling them over and looking for drugs or information to be "harassment."  But they were not, as the government insists, "in vulnerable positions." *Id*. at 1.  The government's greatest magic trick in this case might be the transmutation of criminals into vulnerable crime victims, but the Court should keep in mind that before Alleged Victim 3 finally made a disclosure to the government during her third custodial interrogation, the U.S. Attorney's Office regarded her as a career offender (she was on her fifth felony conviction) whose offenses posed "a danger to society."

The government's motion is also predicated on the alleged offenses being "strikingly similar," essentially part of a "scheme" or "exploitative pattern."  *Id*. at 21, 30.  But stripped of the government's narrative gloss the only real similarity to the allegations against Mr. Bendawald is that, as a police officer, he is alleged to have encountered the Alleged Victims and either solicited sexual favors as bribes or committed a sexual assault.  The government's assertions of a pattern of "grooming," *id*. at 22, fall flat when Mr. Bendawald is only alleged to have had one policing encounter with Alleged Victims 1, 4, 5, and 6 before the alleged crime.  Despite his history of contacts with Alleged Victim 3 and multiple opportunities to develop charges on her, she does not allege Mr. Bendawald ever solicited her for sex.  The only two Alleged Victims who claim they had a long history with Mr. Bendawald and that he solicited them for sex were Alleged Victims 2 and 7, and Alleged Victim 7 is the only complainant to allege Mr. Bendawald forced her to have sex with him.  The government reaches for superficial similarities across some (but certainly not all or even most) allegations, such as alleging he called a complainant's mother, *id*. at 31, but with respect to the core conduct that forms the basis of the charges no pattern emerges.  Far from reflecting a careful scheme where Mr. Bendawald supposedly "groomed" and "assessed" the

Alleged Victims, the indictment represents a scattershot approach where the government stitched together disparate allegations as complainants came forward.

A critical element of the government's assertion of a common intent or motive is its allegation that Mr. Bendawald sought to "cover his tracks," *id*. at 32, particularly by failing to "document his police work," *id*. at 3. In fact, what is remarkable is just how well documented Mr. Bendawald's contacts with the Alleged Victims were for someone who was supposedly trying to conceal illicit sexual encounters. Police reports written by Mr. Bendawald document his contacts with Alleged Victims 3-7, all of which are also captured through body-worn camera footage. Where the allegations involved traffic stops, Mr. Bendawald did not conduct them alone: at least one other officer was present at the traffic stops of Alleged Victims 4-7.[1] The government asserts Mr. Bendawald was "careful to avoid having his name on any report" documenting the welfare check on Alleged Victim 2, but it also notes that *Mr. Bendawald himself* directed CPD officers to go to the scene of his own alleged crime to help his alleged victim. *Id*. at 8-9. In any event, Mr. Bendawald's name is, in fact, on a report of the welfare check, documenting his role in the response.[2]

The material omissions and misstatements in the government's allegations demonstrate that the Court should exercise its discretion and hold an evidentiary hearing on the government's motion. *See United States v. Boyajian*, No. CR 09-933, 2012 WL 4094977, at *4 (C.D. Cal. Sept. 17, 2012) (holding that evidentiary hearing was necessary to determine if alleged prior conduct

---

[1] The outlier is the alleged stop of Alleged Victim 1. It is also the only alleged contact that is entirely undocumented, and the only allegation involving two Alleged Victims who could have corroborated each other's stories. Indeed, all of the circumstances alleged in Count One, where Mr. Bendawald supposedly stopped two women, neither of whom he is alleged to have encountered before or after, assaulted them and then took their drugs, is so unlike any other charged allegation it further demonstrates the lack of common intent, motive, knowledge, scheme, or plan.

[2] *See* BENDAWALD_005403.

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR ADMISSION OF EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 413 AND 404(b) - 5

was admissible under Rule 413). Evidence proffered by the defense in this motion, supported by citation to records produced in discovery, would be introduced at this hearing. An evidentiary hearing is particularly warranted given the vagueness and ambiguity of the other alleged victims' allegations. Throughout its motion the government proffers that they were "harassed" or "stalked," but the fact that the defendant was a police officer and the alleged victims were engaged in criminal activity raises the possibility that the government will seek to unfairly prejudice Mr. Bendawald using potentially innocent policing activity. The same is true with respect to the other victims who allege that Mr. Bendawald touched them inappropriately during a pat-down search. As a police officer, Mr. Bendawald was entitled to touch the other victims for a proper law enforcement purpose, and thus the Court should exercise particular care lest innocent conduct be used against him in the case. The government's proffer on its own is insufficient to warrant admission, but if the Court is inclined to admit any of the new evidence it should first assure itself through an evidentiary hearing that the new allegations are material, similar, and sufficient enough to be admitted at trial.

## ARGUMENT

I.    **Legal Standard Governing Admission of Evidence Under Rules 413 and 404(b).**

A.    **Admissibility Under Rule 413.**

Federal Rule of Evidence 413 permits the government to admit evidence of "any other sexual assault" for any relevant purpose in a case "in which a defendant is accused of a sexual assault." Fed. R. Evid. 413(a). Subsection (d) of the rule defines "sexual assault," and the government contends that Mr. Bendawald is accused of sexual assault in Counts One, Three, and Eight, all of which charge violations of 18 U.S.C. § 242. Mot. at 13-15. Mr. Bendawald recognizes that these counts allege sexual assault for purposes of Rule 413(a). It is notable that the

government has not asserted that the other counts, charging federal program bribery pursuant to 18 U.S.C. § 666(a)(1)(B), constitute accusations of sexual assault.

Although Rule 413 creates a presumption favoring the admission of relevant, qualifying propensity evidence, it is "not a blank check." *United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir. 2004) (internal citations omitted). The alleged conduct must fit the conduct defined in the rule, and the alleged prior assault must be relevant to an issue being prosecuted in the present case. *Id*. at 1245. The government also bears the burden of proving the conditional relevance of the purported evidence under Federal Rule of Evidence 104(b). This means the government must introduce sufficient evidence that a reasonable jury could find by a preponderance of the evidence that the fact exists. *See United States v. Moffit*, 588 F. Supp. 3d 1106, 1113 (D. Idaho 2022) (citing *United States v. Norris*, 428 F.3d 907, 913-14 (9th Cir. 2005)).

The government seeks to admit three other instances of alleged sexual assault. It asserts that the three other alleged instances qualify as sexual assault under Rule 413(d) because the complainants allege conduct that would violate 18 U.S.C. § 2242(1) and (3), both of which are offenses under Chapter 109A of Title 18 and thus fall under Rule 413(d)(1), and Idaho Code § 18-6101(10). Mot. at 19. Subsection (1) of § 2242 prohibits causing "another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping)[.]" 18 U.S.C. § 2242(1). The "fear" described in subsection (1) "encompasses all fears of harm to oneself or another other than death, serious bodily injury or kidnapping." *United States v. Gavin*, 959 F.2d 788, 791 (9th Cir. 1992) (rejecting vagueness challenge with limiting construction and noting "it is possible to think of harms, such as embarrassment, not encompassed by the statute."). Thus, § 2242(1) "require[s] *more* than merely a lack of consent." *United States*

*v. Daniel*, No. 20-cr-112, 2021 WL 3037404, at *7 (D. Idaho July 19, 2021) (emphasis in original).
Section 2242 was amended in 2022 to add a third subsection, which prohibits engaging in a sexual
act "without that other person's consent, to include doing so through coercion."   18 U.S.C.
§ 2242(3).   Lastly, the government contends that the proffered evidence would constitute rape
under Idaho Code § 18-6101(10), which is made applicable through 18 U.S.C. § 2242(d) (defining
"sexual assault" as "a crime under federal law or under state law" involving certain characteristics).
That section of Idaho law defines rape as occurring under circumstances where the victim submits
under the belief that the actor will "accuse any person of a crime or cause criminal charges to be
instituted" against them.   I.C. § 18-6101(10).

Evidence offered pursuant to Rule 413 must be excluded under Rule 403 if its probative
value is substantially outweighed by a danger of unfair prejudice. *Moffit*, 588 F. Supp 3d at 1113.
To determine whether Rule 413 evidence should be excluded under Rule 403, the Ninth Circuit
directs trial courts to consider: (1) the similarity of the prior acts to the acts charged, (2) the
closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the
presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the
testimonies already offered at trial. *Id.* (quoting *United States v. LeMay*, 260 F.3d 1018, 1027-28
(9th Cir. 2001)).   Indeed, it is the due process protections built into Rule 403 that courts have held
saves Rules 413, 414, and 415 from the "serious constitutional due process issue" raised by them.
*See United States v. Enjady*, 134 F.3d 1427, 1430 (10th Cir. 1998); *see also LeMay*, 260 F.3d at
1026-27.   Application of Rule 403 to sexual assault propensity evidence is therefore not a matter
of checking the boxes, but is a vital check on a rule that implicates a defendant's due process rights.

### B.    Admissibility Under Rule 404(b).

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  By its plain terms, Rule 404(b) encompasses evidence of any other act, "bad" or not, when offered by the government to prove that the defendant had a propensity to commit the act and acted in conformity with that act with respect to the alleged crimes.  *See United States v. Curtin*, 489 F.3d 935, 943 n.3 (9th Cir. 2007) (en banc).  Thus, "[t]he clear purpose of this Rule is to confront as a matter of law the proposition that a person's bad character as demonstrated by behavior is relevant and therefore admissible to prove that he acted in conformity therewith."  *Id*. at 943.  "The rule is designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir. 1989) (internal citation omitted).

Rule 404(b) only excludes evidence to the extent it is offered to prove propensity, if the evidence is offered "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," it may be admissible.  Fed. Rule Evid. 404(b)(2).  "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."  *Huddleston v. United States*, 485 U.S. 681, 686 (1988).  For the evidence to be admissible, the government must therefore demonstrate "the evidence is relevant for some other purpose—using a propensity-free chain of reasoning . . ."  *United States v. Charley*, 1 F.4th 637, 640 (9th Cir. 2021).  In order to admit evidence under Rule 404(b), the government bears the burden of demonstrating that the evidence satisfies four requirements: "(1) the evidence tends to

prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) . . . the act is similar to the offense charged (similarity)." *Id*. at 647 (quoting *United States v. Berckmann*, 971 F.3d 999, 1002 (9th Cir. 2020)).

Even where the proposed evidence satisfies these four requirements, it is still subject to exclusion under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See Curtin*, 489 F.3d at 944. "[T]he strength of the evidence establishing the similar act is one of the factors the court may consider when conducting the Rule 403 balancing." *Huddleston*, 485 U.S. at 689 n.6.

## II.    The Proffered Evidence Is Not Admissible Under Rules 413 or 404(b).

The government seeks to admit allegations of seven new "other" alleged victims, as well as additional allegations from two existing alleged victims.  None of this evidence should be admitted.  Only three such allegations are sought for propensity purposes under Rule 413.  The other allegations are sought to be admitted under Rule 404(b) for the purposes of intent, motive, plan, knowledge, common scheme, and to rebut the defense of fabrication by the Alleged Victims. *See* Mot. at 31.  The last purpose is not a proper purpose under Rule 404(b), because bolstering the credibility of charged alleged victims "is essentially a veiled propensity inference." *LeMay*, 260 F.3d at 1028.

### A.    Alleged Victim 2

The government asks the Court to permit the introduction of evidence that Mr. Bendawald had a sexual encounter with Alleged Victim 2 at an unknown time in the spring of 2019 after Alleged Victim 2 attempted to smuggle drugs into a maximum-security prison.  Mot. at 15-16.

The government contends that this encounter is admissible as "intrinsic" evidence of the offense and pursuant to rules 413 and 404(b).  This evidence should not be admitted.

First, an alleged sexual encounter in the spring of 2019 is not "intrinsic" to the offense charged in Count Two of the indictment.  The Ninth Circuit has recognized "two categories of evidence that may be considered 'inextricably intertwined' with a charged offense and therefore admitted without regard to Rule 404(b)."  *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004).[3]  The evidence may be admitted if "evidence [of the prior acts] . . . 'constitutes a part of the transaction that serves as the basis for the criminal charge,'" or it "may be admitted 'when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"  *Id.* (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995)) (citation omitted).  The alleged sexual encounter in the spring of 2019 is not inextricably intertwined with the alleged sexual encounter in December 2018 under either theory.

Count Two of the indictment charges Mr. Bendawald with a discrete instance of federal program bribery in violation of 18 U.S.C. § 666(a)(1)(B) that occurred on a specific date in December 2018.  Although the government has attempted to allege a kind of "scheme," there is no such element to the crime of federal program bribery.  Nor is federal program bribery a continuing offense.  *See United States v. Donehue*, No. 07-280, 2008 WL 1900992, at *2 (N.D. Cal. Apr. 28, 2008).  The offense charged in Count Two was completed when Alleged Victim 2 allegedly exchanged sexual favors in exchange for not being charged for the drugs allegedly found in her residence.  A subsequent incident involving a separate potential offense and a separate alleged

---

[3] Although *DeGeorge* pertained to Rule 404(b), the same criteria should apply to Rule 413, which, like Rule 404, deals with the admission of character and propensity evidence.

sexual act is not in any sense part of the "transaction" that serves as the basis for Count Two. Nor does the government need to be able to present evidence of an encounter that occurred on a later date to explain what happened in December 2018. Simply as a matter of logic, something that happened in the future is not necessary to tell a coherent and comprehensible story of a prior encounter. The alleged Spring 2019 encounter therefore cannot be admitted as "intrinsic" to Count Two.

Nor is it admissible under Rule 413. The alleged encounter, where Mr. Bendawald allegedly procured sexual favors from Alleged Victim 2 in exchange for not charging her for an offense related to the drugs she attempted to smuggle into a maximum-security prison, is not an instance of "sexual assault" as required by the Rule. It is not "sexual assault" as defined under § 2242(1), because there is no allegation that Mr. Bendawald put Alleged Victim 2 "in fear" of harm; indeed, the government states Mr. Bendawald was in plain clothes and Alleged Victim 2 did not know whether he was armed. Mot. at 16. Alleged Victim 2 consented to the sexual encounter, so the only question is whether the consent was procured through "coercion" within the meaning of § 2242(3). The scope of "coercion," a generic term given a myriad of definitions and applications in statute and law, has not been definitively interpreted in the context of § 2242(3), which was enacted in 2022. If Alleged Victim 2 consented to have sex in an effort to bribe Mr. Bendawald to withhold charges against her for which he had probable cause, that cannot be "coercion" within the meaning of § 2242(3).[4] If what she claims is true, Alleged Victim 2 had a

---

[4] Mr. Bendawald recognizes that in the context of the federal crime for sex trafficking, which is not in Chapter 109A, coercion is defined as the abuse or threatened abuse of law or legal process. *See* 18 U.S.C. § 1591(e). This merely reinforces how the definition of "coercion" reflects the context of the offense: sex traffickers using the threat of criminal charges to keep their victims engaging in commercial sex acts is different from a criminal suspect bribing an official with sexual favors to get out of their crimes.

choice about what to do, and the fact she had a choice between the consequences of her criminal actions and accepting the solicitation to benefit herself removes bribery conduct from the ambit of sexual assault.  Indeed, the government implicitly conceded that this same bribery conduct is not "sexual assault" when it asserted that only Counts One, Three, and Eight of the indictment involved sexual assault, but not the counts charging federal program bribery.  *See* Mot. at 13-15.  Therefore, Rule 413 does not apply.[5]

Mr. Bendawald recognizes that Alleged Victim 2's additional allegations involve a solicitation of a sex act in exchange for getting out of criminal charges, which is similar to conduct alleged in the bribery counts of the indictment.  But as noted above, there is no common scheme or pattern that this separate incident would support, raising the significant risk under Rule 404(b) and Rule 403 that the jury would draw impermissible propensity inferences from the allegation.  Again, the only real commonality between the allegations is that Mr. Bendawald was a police officer and that he obtained sexual favors in exchange for consideration on charges.  There are also questions raised by the government's allegations that go towards the sufficiency of the allegations and would warrant an evidentiary hearing so that the Court could perform a complete Rule 403 analysis: if this is all there is to the allegation, how did Mr. Bendawald know Alleged Victim 2 was transporting drugs to the prison on that day?  How did he know where to find her?  There is more to this allegation than the government has presented, and Alleged Victim 2's testimony at an evidentiary hearing would allow the Court to weigh the probative value of the allegation against the danger of unfair prejudice.  In any event, admission of this allegation would also be unnecessarily cumulative under Rule 403 and would be essentially another count that would have

---

[5] If bribery is not "coercion" within the meaning of § 2242(3), then the Idaho statute cited by the government, Idaho Code § 18-6101(10), cannot be a state law that prohibits conduct that is also prohibited by 18 U.S.C. Chapter 109A.  *See* Rule 413(d)(1).

to be vigorously defended.

     **B.**    **Alleged Victim 7**

     The government seeks the admission of essentially three alleged instances of prior conduct with respect to Alleged Victim 7: (1) Mr. Bendawald's initial encounter with Alleged Victim 7 at an unknown time; (2) Mr. Bendawald's continued conduct towards Alleged Victim 7; and (3) an alleged incident at an unknown time where Mr. Bendawald solicited Alleged Victim 7 and obtained sexual favors from her.  Mot. at 16-17.  Only the latter would be admissible under Rule 413, with the rest being admissible, if at all, only under Rule 404(b).

     As with Alleged Victim 2's additional allegations, these allegations are not intrinsic to Counts Seven or Eight.  As noted, federal program bribery is not a continuing offense, the offense alleged in Count Seven was discrete to that encounter.  A similar incident that occurred at an unknown time in the past is a separate crime, not one that is needed to complete the story of what is alleged in Count Seven.  The prior alleged incident also cannot be intrinsic to Count Eight, because it does not involve a deprivation of rights for purposes of 18 U.S.C. § 242.  The essence of the government's allegation with respect to that count is that Mr. Bendawald violated Alleged Victim 7's constitutional rights by exceeding the scope of consent she had given for consideration on her charges.  Mot. at 6-7.  Count Eight is thus a separate, discrete event involving a wholly different alleged crime than the prior instance of bribery.

     With respect to Rule 413, Alleged Victim 7's allegations are not admissible for the same reason that Alleged Victim 2's are not admissible: bribery conduct is not "sexual assault" within the meaning of Rule 413.  Also like Alleged Victim 2's new allegations, Mr. Bendawald recognizes that Alleged Victim 7's allegations involve solicitations of sexual favors in exchange for consideration on criminal charges, which is similar to the bribery counts for purposes of Rule

404(b).  However, Alleged Victim 7's allegations appear to be intertwined with legitimate police activity, in that Mr. Bendawald is alleged to have sought to obtain information from her and to get her to "cooperate with him."  Mot. at 16-17.  It is not clear when these contacts occurred, how many there were, or their context, and therefore in order for the Court to be able to fully perform its role under Rule 403 it should exercise its discretion to hold an evidentiary hearing to examine the allegations and assess whether their admission would be unfairly prejudicial.  These allegations also put Mr. Bendawald's entire history of policing Alleged Victim 7 at issue, which will present cumulative evidence and risk misleading or confusing the jury, and thus further scrutiny is warranted.

### C.    Other Alleged Victim 1

The first of the new complainants the government presents is OAV1, who is alleged to have had encounters with Mr. Bendawald over many years, to include one instance of sexual intercourse at an unknown time and other non-specific instances of allegedly inappropriate searches.  The government omits from its short proffer that OAV1 is a notorious gang member in Caldwell with a history of drug trafficking and whom Canyon County Sheriff Kieran Donahue called a "violent offender" when she recently escaped from the Canyon County Jail, causing a nearby school to go into lockdown.  She is currently serving a prison sentence on multiple drug charges.

OAV1 is also closely connected with most of the Alleged Victims.  Indeed, she was present during the events alleged in Count Three when Caldwell police officers came to her residence looking for her brother (who was later indicted by the U.S. Attorney's Office as part of a sweeping firearms and drug trafficking investigation involving her fellow gang members) and arrested Alleged Victim 3 (indicted alongside OAV1's brother).  Mr. Bendawald also pulled over a car in

April 2020 being driven by OAV1 with Alleged Victim 4 as her passenger, where he found drug paraphernalia in the vehicle.  Notably, Mr. Bendawald conducted this traffic stop in Meridian, Idaho, where he was assisting the Treasure Valley Metro Violent Crime Task Force (a gang task force led by the FBI), because both OAV1 and Alleged Victim 4 were involved in gang activity and drug trafficking throughout the Treasure Valley.

The Court should therefore be skeptical of the government's characterization of OAV1 and the other new complainants as "vulnerable."  Mot. at 22.  The Court should also be skeptical when the government proffers that Mr. Bendawald "harassed" and "stalked" OAV1.  *Id*. at 17.  OAV1 is a hardened criminal and gang member deeply involved in Caldwell's criminal drug scene: it was Mr. Bendawald's job to police her, including by conducting traffic stops of her vehicles and attempting to obtain information from her regarding the criminal activity she and others were involved in.  It should come as no surprise that a criminal like OAV1 would characterize proactive policing as "harassment."  Moreover, Mr. Bendawald's role in policing OAV1, her friends, and family members, provides ample reason for her to fabricate her claims.

### 1.    OAV1's Allegations Are Not Admissible Under Rule 413.

More fundamentally, with one exception, the government's proffer does not allege that Mr. Bendawald sexually assaulted OAV1 within the meaning of Rule 413.  The government alleges that Mr. Bendawald and OAV1 had sexual intercourse, Mot. at 18, but the government does not proffer facts that would support the conclusion that the alleged sexual encounter was the product of a fear of harm, coercion, or even procured by the threat Mr. Bendawald would charge OAV1 with a crime.  *See id*. at 19.  In stark contrast to the conduct alleged in the indictment, the government does not allege any threat by Mr. Bendawald to charge OAV1 with a crime if she did not have sex with him.  The only threat the government alleges, that Mr. Bendawald once stopped

OAV1 and threatened to charge her with a felony, but never did, is not alleged to have been connected to the alleged sexual encounter. *See id.* at 18. The government does not allege when this stop occurred in relation to the alleged sexual encounter, does not allege why Mr. Bendawald did not charge OAV1 with a crime, and does not allege any sexual solicitation in connection with the stop.[6]

With respect to the alleged encounter itself, the government does not allege that Mr. Bendawald made any threats against OAV1, explicit or implicit. Indeed, the only allegation as to what Mr. Bendawald actually said to OAV1 was an invitation to have sex with him. *See id.* To be sure, the government alleges OAV1 did not want to have sex with Mr. Bendawald and that she felt he was "harass[ing]" her. *Id.* But merely not wanting to have sex does not make a sexual encounter sexual assault. It is doubtful that any of the many criminal defendants who enter guilty pleas before the Court want to plead guilty, but that does not prevent their doing so from being knowing, voluntary, and uncoerced in the eyes of the law. Rule 413 by its plain terms requires more, and specifically under the provisions relied on by the government it requires placing someone in fear of harm, coercion, or a threat of being accused of a crime. Yet this encounter is alleged to have occurred while OAV1 was out of custody, in a family member's home. The government does not allege she was under investigation or suspicion for any crime at the time. The government alleges she was "[s]cared,"[7] but also that she successfully ended the sexual encounter before ejaculation, with no allegation that there was any attempt to keep the encounter going against her will. The government's allegations simply do not rise to the level of sexual

---

[6] Indeed, when she was interviewed by the FBI, OAV1 specifically stated that she "never had sex with BENDEWALD [sic] specifically to avoid particular charges, and only had sex with him once." *See* BENDAWALD_000316.

[7] OAV1's interview with the FBI indicates she was not afraid because of Mr. Bendawald, but because "she thought someone was going to come home." *See* BENDAWALD_000315.

assault required by Rule 413.

The entire (non-empirical) rationale standing behind the Rule 413 exception to the general rule against propensity evidence is that "evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes," *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998), a rationale that is diminished if the definition of "sexual assault" is expanded to encompass a situation where there is no allegation of the use of force, fear of harm, threats, or actual coercion. It cannot be the case that any time a police officer has sex with a criminal that it is sexual assault for purposes of Rule 413, but that is the inescapable conclusion from the government's proffer.

Mr. Bendawald recognizes that the government also alleges Mr. Bendawald touched OAV1's groin area when he searched her pursuant to one or more traffic stops, Mot. at 18-19, and that such touching could constitute sexual assault. As with OAV1's other allegations, this one is vague: it is unclear when or where this alleged touching occurred or precisely what happened. The government alleges Mr. Bendawald put his fingers inside OAV1's pants and touched her groin area (all of which could be part of a proper search), but also that he touched her body "in a sexual way," which could mean anything. Mot. at 19. Apparently, this alleged touching occurred in the presence of other officers. *Id*. at 18-19. It is therefore not clear what actual evidence the government intends to present, and thus the Court cannot perform its role to evaluate whether the evidence of the claim of sexual assault is sufficiently reliable to go to the jury. *See United States v. Edwards*, 272 F. Supp. 3d 1270, 1284 (D. N.M. 2017) ("It is difficult for the Court to determine that a jury could reasonably conclude that the alleged 'other act' occurred . . . when the 'other act' is not clearly defined . . . . [T]he accusations . . . lack details regarding the date, time, specific actions, and specific circumstances of the alleged sexual abuse.").

The Court should therefore exclude OAV1's allegations pursuant to Rule 413.

## 2. OAV1's Allegations Are Not Admissible Under Rule 404(b).

OAV1's allegations are insufficient to be admitted for purposes of propensity under Rule 413, and are also not admissible for any other purpose under Rule 404(b). The government does not explicitly identify the bases under Rule 404(b) for which OAV1's allegations would be offered, but it is likely to assert an alleged "pattern of behavior" involving exploitation of the "power of his position and inherent vulnerability" of the complainants. Mot. at 20. Applying the four tests of materiality, recency, sufficiency, and similarity, OAV1's allegations are not admissible for any proper purpose, and thus risks being offered only for forbidden propensity purposes.

The government's allegations with respect to OAV1 recall the facts of *United States v. Huddleston*, where the government sought to introduce a prior instance where the defendant (who was charged with a theft crime) offered to sell numerous new televisions to another person. 485 U.S. at 683. As the Supreme Court recognized, this conduct was only relevant to the case "if the jury could reasonably find that the televisions were stolen." *Id*. at 689. Similar to *Huddleston*, the relevance of OAV1's allegations is conditioned upon the fact that her alleged encounters with Mr. Bendawald were not because Mr. Bendawald was doing his job as a police officer but were part of an effort to use his police authority to force or coerce OAV1 into having sex with him. *See* Fed. R. Evid. 104(b). The government has failed to put forward evidence that would permit such a conclusion.

Even taking these allegations as true, Mr. Bendawald having a sexual encounter with a person he policed is not a crime, and it is not the same as the conduct alleged in the indictment. As demonstrated above, the government significantly overstates the "pattern of behavior" alleged, but even assuming there is such a pattern, the allegations with respect to OAV1 are outside it. The government's allegations do not involve any alleged exchange of sexual favors for consideration

with respect to criminal charges, no alleged attempt to hold charges over the complainant to obtain sexual favors, and no allegations of violent or forced sexual contact. The government certainly alleges that Mr. Bendawald encountered OAV1 in the course of policing the community, but it has not provided sufficient evidence to conclude even by a preponderance that the alleged contacts were improper "harassment" or "stalking" as opposed to the proactive policing of a notorious gang member and hardened criminal. The government also does not even allege facts that would support the conclusion that it was improper for Mr. Bendawald to turn off his body-worn camera.[8] It is telling that the government does not allege where or when these contacts occurred, what happened during these contacts, why Mr. Bendawald made the contacts, or indeed any details at all beyond the conclusory assertion that the contacts comprised "harassment" and "stalking." The government thus fails to proffer sufficient evidence to meet the requirements of materiality, sufficiency, and similarity.

It is also not clear the government has alleged sufficient facts to clear the bar of recency, because the government fails to allege when the alleged encounters occurred. The only date marker in the government's allegations is the age of OAV1 at the time she first encountered Mr. Bendawald, but the government does not allege how old she is now or when any of the other alleged conduct occurred in relation to that date. The Court cannot assess recency if it does not know when the alleged conduct occurred.

Having thus failed to satisfy any of the four requirements for admission under Rule 404(b),

---

[8] The government states in its background section that Mr. Bendawald "regularly failed to use his Body Worn Camera (BWC) in accordance with CPD policy," Mot. at 3, and that he told OAV1 "how he selectively turned off his body camera," *id*. at 19. But the government fails to connect what Mr. Bendawald allegedly told OAV1 with CPD policy. There may be a reason under the policy, such as avoiding recording interactions with confidential sources that could be disseminated and endanger that person, for turning off a body-worn camera.

OAV1's allegations should be excluded.

### 3.    OAV1's Allegations Should be Excluded Under Rule 403.

For the reasons stated above, any probative value of OAV1's vague allegations, alleging conduct that is outside of the heartland of the allegations in the indictment, is substantially outweighed by the danger of unfair prejudice to Mr. Bendawald.  Where the alleged other conduct is not a sexual assault and fails the test of similarity under Rule 404(b), it cannot be said that it is highly probative with respect to the charged conduct.  Evidence that Mr. Bendawald had sex with OAV1 is not probative as to whether he solicited bribes from or violated the civil rights of the Alleged Victims, conduct that he denies outright.[9]  Indeed, it is not clear that the government has reached even the basic threshold of admissibility with respect for Rule 403, which is providing this Court with sufficiently definite allegations so that it can perform the Rule 403 balancing test. *See Curtin*, 489 F.3d at 957.

In addition to risking undue prejudice, OAV1's testimony would risk confusing the issues, misleading the jury, undue delay, and needlessly presenting cumulative evidence.  To refute claims of "harassment" and "stalking" Mr. Bendawald would be required to present evidence on every police contact he had with OAV1 and would be entitled to present evidence impeaching her credibility, essentially the "mini-trial" that the government purports to disclaim.  *See* Mot. at 23.  There is no reason to take the time and incur the delay of presenting OAV1's testimony, given that the government will already be able to present the allegations of seven complainants.  The additional probative value of another complainant who does not allege Mr. Bendawald threatened her with charges for sexual favors and who at most alleges an improper search is minimal, serving

---

[9] The government's citation to the legislative history underlying Rule 413, which concerned refuting the contention that sexual conduct was consensual, is thus inapposite in this case.  *See* Mot. at 20-21.  Mr. Bendawald asserts that the charged conduct simply did not happen.

only to unduly prejudice Mr. Bendawald. Presentation of this evidence would thus also risk misleading the jury as to the issues in the case, risking a conviction based on non-criminal conduct with OAV1 as opposed to the charges in the indictment. Therefore, it must be excluded.

### D.    Other Alleged Victim 2

The government seeks to introduce evidence of OAV2's history with Mr. Bendawald, despite the fact that according to the government's motion OAV2 and Mr. Bendawald never had a sexual encounter of any kind. Mot. at 24-25. Instead, the government repeats the by now familiar but vague allegations that Mr. Bendawald "stalked" and "harassed" OAV2, together with the somewhat fanciful allegations that OAV2 wore Mr. Bendawald's police uniform while riding with him on duty in his marked patrol car. *Id*. at 24. In the end, the government offers the conclusory assertion that OAV2 later realized this alleged behavior (supposedly going back to 2010) was an effort to groom her for sexual encounters, despite the fact that there is no allegation Mr. Bendawald ever propositioned OAV2 for sexual favors. *Id*. at 25. The government concludes by making allegations with respect to what other officers, not Mr. Bendawald, did. *Id*.

OAV2 was not one of the individuals the government identified as an alleged victim when Mr. Bendawald was arraigned. She came to the government's attention later, in April 2024, when she had an encounter with police in downtown Caldwell. According to the police report of this encounter, OAV2 appeared to be having some kind of mental health crisis and made statements with respect to five former CPD officers, including Mr. Bendawald, because "they were the only ones able to help her with her problems."[10] The reporting officer wrote that OAV2 "was making other sexual innuendos, and making the situation very awkward for everyone," including by "lay[ing] in a sexual nature on the sidewalk and [...] saying inappropriate comments about her

---

[10] The police report was produced in discovery at BENDAWALD_040534.

dying and needing CPR." OAV2 "grabbed her breasts and pointed at one of the firemen," and exposed her breasts to the emergency responders.

Based on police reports produced in discovery, OAV2 has a long history of encounters with CPD officers (though not necessarily Mr. Bendawald). She does not appear to have been involved in drug trafficking or Caldwell's gangs, but has multiple felony convictions for possessing controlled substances, for which she served a term of incarceration. In one prior incident in 2014, which did not involve Mr. Bendawald, OAV2 was arrested and taken to the hospital because she was so intoxicated she needed to be medically cleared before she would be allowed into the jail.[11] OAV2 told the medical staff that the arresting officer (again, not Mr. Bendawald) "detained her because she would not 'fuck' [him]." OAV2 claimed to have had sex with multiple Caldwell police officers. OAV2 tried to rub her feet on the arresting officer, and her mood alternated between crying and appearing upset and "smiling and laughing and even attempting to flirt with [him] and making comments about wanting to 'fuck' [him]." OAV2 is presently incarcerated, having been charged with domestic battery in October 2024 and felony battery on a peace officer in December 2024.

Other records produced in discovery suggest that OAV2 was in fact having sexual relations with a CPD officer, but not Mr. Bendawald. During an internal investigations interview in October 2011, another officer confessed that he had a sexual relationship with OAV2 in the 2010 timeframe.[12] OAV2 named this officer when she had her mental health crisis in April 2024. This officer was later fired from CPD, decertified, and is presently serving a prison sentence for a criminal conspiracy.

---

[11] The police report was produced in discovery at BENDAWALD_040467.
[12] *See* CPD_FILTER_000013.

OAV2's allegations do not fall within one of the Rule 404(b) exceptions and should be excluded under Rule 403. OAV2's allegations are not similar to the charges in the indictment and therefore are not relevant. OAV2 does not allege any sexual contact with Mr. Bendawald of any kind, or that he ever tried to have sex with her despite apparently ten years of contact. She does not allege he solicited a bribe from her in exchange for withholding charges. As with OAV1, the government uses conclusory terms like "harassment" and "stalking," but again fails to connect Mr. Bendawald stopping OAV2 with an improper purpose. Without that evidence of an improper purpose, OAV2's allegations that Mr. Bendawald contacted her mother or supposedly tried to deter her from hanging out with other men (When? How? What is he alleged to have said?) lack relevance.[13] Indeed, OAV2 alleges that she believed at the time that Mr. Bendawald was well-intentioned and genuinely wanted to help her, Mot. at 25, which if any of this happened at all makes sense given the lack of any allegation of sexual contact or sexual solicitation. It appears that only later, possibly after learning of the FBI's investigation into Mr. Bendawald, did OAV2 come to think Mr. Bendawald was "grooming" her. *Id.* In addition, as with OAV1, the government has not provided sufficiently detailed allegations to allow the Court to evaluate the recency of the allegations. Contact is alleged to have begun in 2010, but none of the other alleged conduct is dated.

The government has also failed to clear the bar of sufficiency. Although Mr. Bendawald recognizes that the testimony of a direct witness is normally sufficient, the evidence related to OAV2 produced in discovery seriously calls her reliability and credibility into question. OAV2

---

[13] This conduct, even if it happened, could be for an innocent purpose: police reports produced in discovery involving OAV2 reflect contact between CPD and her mother, BENDAWALD_040479, multiple allegations of domestic abuse, *id.*; BENDAWALD_040485, and, with respect to the only report produced in discovery to mention Mr. Bendawald, concern that a man was going to kill her, BENDAWALD_040498.

apparently has mental health issues expressing as inappropriate sexual conduct, has made false allegations of sexual misconduct against CPD officers in the past, and even appears to have misattributed to Mr. Bendawald her sexual encounters with a different officer. It is more likely than not that OAV2's allegations are false, and thus not relevant for any purpose.

Given the substantial reasons to doubt OAV2's allegations and their lack of probative value, they should be excluded under Rule 403. There is substantial danger Mr. Bendawald would be unfairly prejudiced, and the jury confused, by the presentation of OAV2's vague and fanciful allegations which do not involve conduct similar to the conduct alleged in the indictment. As with OAV1, OAV2's allegations would be subject to a "mini trial" examining her entire history with Mr. Bendawald (assuming there is actually any history to explore) to determine whether the conduct she alleges was done for an improper purpose. Again, OAV2's allegations would also be cumulative to the allegations in the indictment. Therefore, they should be excluded.

### E.    Other Alleged Victim 3

OAV3 briefly served as a source of information for Mr. Bendawald in late 2019. The government does not allege that Mr. Bendawald ever had sexual contact with her, solicited her for sex, or used criminal charges to obtain sexual favors from her. Instead, the government appears to allege that Mr. Bendawald was going to do those things, or was trying to do those things, during the time he had contact with OAV3. *See* Mot. at 25-26. Again, the government uses loaded words like "stalking" instead of simply describing the other acts it wishes to bring into the case. *See id.* at 26. As with the government's other allegations, there is much more to the story than what the government presents in its motion.

The government presents a narrative alleging Mr. Bendawald did not follow proper procedures when signing up OAV3 as a source of information, likely intending for the Court and

the jury to infer he wanted to keep his contacts with her hidden. But that is not what happened. At the time, Mr. Bendawald was not in the Street Crimes Unit but was working in property crimes. OAV3 was charged with being a felon in possession of a firearm at the end of November 2019, and shortly afterwards Mr. Bendawald used his work email to query criminal history information on OAV3.[14] Records from the Canyon County prosecutors indicate they were aware OAV3 was working with another CPD officer in property crimes in early December.[15] OAV3's time as an informant does not appear to have lasted very long, because Mr. Bendawald informed other CPD officers in mid-December that OAV3 was being terminated as a source.[16] Mr. Bendawald later spoke with the Canyon County prosecutors in early 2020 about the assistance OAV3 provided during her short term of cooperation, recommending that she receive some consideration.[17] Eventually, the prosecutors determined to drop OAV3's new charges, have her admit the probation violation, and continue her on probation.[18] Thus, at no point was the fact Mr. Bendawald was using OAV3 as a source concealed from CPD or prosecutors.

At the same time, OAV3's probation officer noted that OAV3 was expecting charges to be dropped in exchange for work she had done for a detective, suggesting the probation officer was aware OAV3 was an informant.[19] OAV3 did poorly while on probation over the next year, reporting to her probation officer that she was admitted to a mental hospital, continued to abuse drugs on a daily basis, was investigated by child protective services for abuse and neglect, instructed her children to lie to the probation officer during that investigation, and moved between

---

[14] BENDAWALD_FILTER_037634.
[15] BENDAWALD_004109.
[16] BENDAWALD_FILTER_038434.
[17] BENDAWALD_004109.
[18] BENDAWALD_004109.
[19] *See* BENDAWALD_004346.

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR ADMISSION OF EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 413 AND 404(b) - 26

rehab facilities and shelters for several months, even residing out of state.[20]  In mid-January 2021, OAV3's probation officer finally submitted a new probation violation for her.[21]  A month-and-a-half later, OAV3 was interviewed for the first time by the FBI.[22]  OAV3 later told her probation officer "[s]he believes that her criminal case will be dismissed due to contact with the FBI regarding CPD Bendawald," and that she expected her public defender would request that her case be dismissed and she be released from probation for the same reason.[23]  It was well known at this time that Mr. Bendawald was under investigation by the FBI.

With respect to the investigation alluded to by the government, it appears to have begun not because of a claim made by OAV3, but by another CPD informant.  When the Lieutenant investigating the third-party allegation attempted to speak with OAV3 through her public defender, the public defender and OAV3 made the decision to "blow off" the Lieutenant and not participate in the investigation.[24]  Thus, unable to speak to the subject of the allegation or even obtain a statement from her lawyer, the Lieutenant closed the investigation out as "unable to be determined."[25]

OAV3's allegations should be excluded because they are not sufficiently similar to the charged allegations to provide any meaningful evidence to the jury regarding Mr. Bendawald's intent, motive, plan, common scheme, or any other purpose identified by the government.  The government does not allege Mr. Bendawald found drugs with OAV3, only that she had a probation violation that Mr. Bendawald is not alleged to have been involved in.  Mot. at 25.  There is certainly

---

[20] *See* BENDAWALD_004345, 4349, 4350, 4355, 4367, 4369, 4370.
[21] *See* BENDAWALD_004371.
[22] *See* BENDAWALD_000189.
[23] *See* BENDAWALD_004373.
[24] *See* BENDAWALD_003882-3883.
[25] *See* BENDAWALD_038433-38434.

no allegation that Mr. Bendawald promised to help OAV3 with her probation violation in exchange for sexual favors. Instead, the government alleges that Mr. Bendawald used OAV3 as a source of information, and the evidence would show that Mr. Bendawald gave OAV3 consideration with respect to her charges for the information she gave him, *without* her giving him any sexual favors.

It is therefore not at all clear that the other alleged conduct, that Mr. Bendawald conducted traffic stops of OAV3, gave her a number to call, encountered her while she was shopping, or came to her home, was for an improper sexual purpose. Again, the government's allegations as to these other contacts are vague: it is not alleged when they happened, what the actual contacts entailed, or any other context around them that would allow the Court to determine whether this conduct was "stalking" or whether it was related to the fact that OAV3 was working as an informant for Mr. Bendawald. Even the alleged encounter at OAV3's home, where no sexual solicitation or conduct is alleged to have occurred, is not similar to any of the charged conduct.

Nor do Mr. Bendawald's alleged comments to OAV3, without more, suggest a common scheme or common intent with the charged alleged conduct. Even if these comments reflected sexual interest by Mr. Bendawald (as opposed to a police tactic or means of gathering information about OAV3's criminal associates), there is no allegation that he acted on it or touched her without her consent, that he solicited OAV3 for sex, that he held any charges or her probationary status over her to obtain sexual favors, or punished OAV3 for rejecting his advances (quite the contrary, he helped her without sexual favors). The government would thus be presenting only evidence of propensity—Mr. Bendawald's supposed sexual interest—and not other acts that relate to the alleged criminal conduct. As with the government's other allegations of "harassment" and "stalking" where there was no sexual solicitation or conduct, the course of conduct alleged here is only relevant if Mr. Bendawald's wrongful intent is assumed. That intent is not evident in these

allegations, which are sufficiently dissimilar from the charged conduct that the bad intent alleged there cannot be imputed to OAV3's allegations.

For this reason, even if there is some meager probative value under a Rule 404(b) analysis, it is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and needlessly presenting cumulative evidence. The probative value of a course of conduct that resulted in no sexual solicitation, no sexual contacts, and assistance with charges nonetheless, is minimal. The allegations are weak, and OAV3 plainly believed that by making them she would get out of her state charges. By contrast, the potential for unfair prejudice to Mr. Bendawald is high, given that the number of complainants is at the heart of the government's case. As shown by the recitation of facts above, there would have to be another "mini trial" to test OAV3's allegations and her strong and expressed motive to exaggerate or fabricate, which risks misleading the jury as to the issues in the case. Such evidence would also be cumulative given the government already has seven complainants, and a weak, non-criminal allegation adds little or nothing to their claims.

### F.    Other Alleged Victim 4

OAV4's allegations are even less probative than OAV3's. The government alleges she was "constantly" pulled over in 2019 and 2020 (without discussion of any particular traffic stop), that she was let go from one stop where drug paraphernalia was allegedly discovered (without any allegation of the context of the stop, what the paraphernalia was, or if anyone else was there), and then left a citation at her house. Mot. at 27. Once again, the government does not allege any sexual contact, any sexual solicitation, or even any comments related to OAV4's appearance or any other statement that would indicate Mr. Bendawald had a sexual interest in her. Without evidence of any sexual purpose, none of OAV4's other allegations are relevant. And in the absence

of any sexual conduct or statements whatsoever, OAV4's allegations are not similar to the charged conduct. It cannot be the case that the government is entitled to present evidence of Mr. Bendawald stopping any woman he encountered during his police work if the government thinks something was off about that interaction. There is simply no evidence of a sexual or even improper purpose in anything Mr. Bendawald is alleged to have done with respect to OAV4. The allegations are therefore not material and are too dissimilar to the charged conduct to be probative of any permissible purpose under Rule 404(b).

Even if there was such a purpose, it is substantially outweighed by the risk of unfair prejudice, confusion of issues, misleading the jury, and needlessly presenting cumulative evidence. The only purpose to admitting these allegations seems to be to allow the government to claim a larger number of victims in its opening statement, which is in essence a forbidden propensity argument. There is certainly little to no probative value in asking the jury to speculate why Mr. Bendawald policed OAV4 in the way that he did, which again invites a "mini trial" on the context of every traffic stop and every interaction he had with her given the vagueness of the government's allegations. There is no reason to risk confusing the jury on the issue in this case or the presentation of such cumulative and weakly relevant evidence.

### G.    Other Alleged Victim 5

The government seeks to admit allegations by OAV5 that Mr. Bendawald was inappropriate with her during a pat-down search for drugs after she was pulled over. Mot. at 27-28. The government does not allege any course of conduct between OAV5 and Mr. Bendawald. Nor does the government allege that Mr. Bendawald solicited her for sexual favors: the whole of the allegation is the allegedly improper search. Indeed, there is not even an allegation that OAV5 understood Mr. Bendawald's efforts to make OAV5 a source of information to have a sexual

purpose.

The government's allegations are therefore not sufficiently similar to be admissible under Rule 404(b).  Given that there is no alleged course of conduct between Mr. Bendawald and OAV5 and no allegation of a solicitation during or after their contact, her allegations cannot be said to be evidence of a plan, preparation, or common scheme.  There is no allegation that Mr. Bendawald attempted to use OAV5's drug charges to obtain sexual favors from her.  Her allegations are therefore not probative of Mr. Bendawald's intent or motive.

The government would likely reply that OAV5's allegations are more similar to the conduct alleged in Counts One and Three of the indictment, which also allege improper touching by Mr. Bendawald.  But OAV5's allegations are not similar to those counts either.  The government alleges in both Counts One and Three that Mr. Bendawald touched the complainants in the genital area underneath their clothing and made lewd comments to them, even penetrating Alleged Victim 1.  *See* Mot. at 5-6.  The allegation in Count One is that Mr. Bendawald stopped two women by himself late at night in a remote area and assaulted the two passengers in the car, going well beyond an allegedly improper search.  *Id*. at 5.  The government alleges that Mr. Bendawald had a significant course of conduct with Alleged Victim 3, *id*., which is wholly absent from OAV5's allegations.  A one-off encounter where Mr. Bendawald allegedly improperly touched OAV5's breasts over her clothing and looked down her shirt in the course of a routine traffic stop and drug investigation while other officers were present is hardly similar to the government's charged allegations, especially in the absence of comments or other conduct indicating motive.  Therefore, OAV5's allegations are not sufficiently similar, and thus not sufficiently material, to be admissible under Rule 404(b).

Nor should OAV5's allegations be admitted under Rule 403.  There is a significant danger

of unfair prejudice to Mr. Bendawald for little to no probative value. The alleged conduct in Counts One and Three is beyond any legitimate police purpose, but OAV5's allegations are not inconsistent with a standard police search incident to a drug crimes investigation that she believes went too far. Despite knowing of OAV5's allegations since June 2021 (the alleged incident likely occurred in the first half of May 2021, when Mr. Bendawald was well aware he was under FBI investigation), it does not appear that the government ever obtained the police report or body-worn camera recording from OAV5's arrest, both of which could exonerate Mr. Bendawald, which is another reason to hold an evidentiary hearing. The low probative value of OAV5's allegations also risks misleading the jury as to the actual issues in the case and is needlessly cumulative on top of the other allegations.

### H.    Other Alleged Victim 6

OAV6's allegations should be excluded under Rule 404(b) because they are not sufficiently similar to the conduct charged in the indictment. First, the government does not allege that OAV6 was involved in drugs or that Mr. Bendawald even encountered her as part of an investigation into any wrongdoing on her part. Mot. at 28. The allegation that Mr. Bendawald pushed OAV6 up against the car is not alleged to have been for a sexual purpose; the government instead appears to allege that it was done to intimidate OAV6 into not "meddling" with people associated with her daughter. *Id.* Nor was Mr. Bendawald alone; the government alleges the encounter occurred "with other CPD Officers." *Id.* There are no allegations of any other contacts between Mr. Bendawald and OAV6, *id.*, which is dissimilar from the government's allegations that Mr. Bendawald "harassed" or "stalked" the complainants to build charges on them. In that context, the statement regarding oral sex does not appear to be a sexual solicitation, as opposed to another part of the allegedly intimidating course of conduct. Certainly, the government does not allege any sexual

contact between Mr. Bendawald and OAV6, or that Mr. Bendawald followed up with her for any sexual favors.  OAV6's allegations are therefore too dissimilar to be for any purpose other than the government desiring to claim another complainant and to convince the jury that Mr. Bendawald is a "bad guy," precisely the inference Rule 404(b) is supposed to prevent.  *See Curtin*, 489 F.3d at 957 (noting that "a trial court must take appropriate care to see that" a defendant is not convicted "simply as a bad person").

There is a strong risk of unfair prejudice to Mr. Bendawald given the low probative value of OAV6's allegation and the inflammatory nature of her allegations.  As noted, the probative value of the allegation is weak: it does not speak to any plan or intent with respect to the charged conduct and there is no common scheme discernible from a one-off alleged incident of intimidation.  There is a substantial risk that presenting evidence of these allegations would simply serve to prejudice the jury against Mr. Bendawald.  Further, there is reason to believe this allegation is false.  The government obtained a police report from 2017 showing a different officer responding to OAV6's call that her daughter was a runaway, with no mention of Mr. Bendawald.[26] The allegations themselves are dubious, and would require believing that, despite the government's claim that Mr. Bendawald takes great pains to conceal his misconduct, he pushed OAV6 up against her car for no reason and asked her to "suck his dick" while a number of other officers were present.  It would also require believing he did so in order to protect OAV6's daughter's likely criminal associates, when there has been no other allegation presented by the government that Mr. Bendawald had ever done anything of the sort on any other occasion.  The only written evidence, from a source other than Mr. Bendawald, does not mention him, and the allegations themselves do not add up.  There is therefore substantial danger of unfair prejudice to

---

[26] *See* BENDAWALD_006427.

Mr. Bendawald if this allegation is admitted, for no probative value.

### I.    Other Alleged Victim 7

OAV7, who also was not originally identified as an alleged victim, alleges that Mr. Bendawald's instructions to her during a stop caused her genitalia to be exposed.  Mot. at 28-29.  The government alleges OAV7 filed a complaint, that Mr. Bendawald received the complaint, and that another CPD officer contacted her about the complaint and admonished her.  *Id.* at 29.  Assuming OAV7 was in fact admonished, the reason is likely because her allegation is false.

The alleged encounter occurred in May 2021, in Nampa, Idaho, where Mr. Bendawald was assisting Nampa police officers in searching for a fugitive.[27]  Mr. Bendawald stopped OAV7 as she was leaving the residence where the fugitive was suspected to reside, because her vehicle did not have a license plate displayed (a violation of Idaho Code § 49-428).  Importantly, Mr. Bendawald recorded the entire encounter with his body-worn camera, which recording was produced in discovery.[28]  That recording unequivocally shows OAV7 never said she was not wearing underwear, that Mr. Bendawald never asked her to pull up her shirt, and shows OAV7 pulling her shirt up a few inches and adjusting her pants after Mr. Bendawald asked her to empty her pockets as part of a routine weapons check.  The video also shows that at no point were her genitalia exposed.  OAV7's actual complaint to CPD is also more modest than the allegations relayed by the government: she complained her "pubic region" was out.[29]  Nevertheless, even that was not true, as is clearly shown by Mr. Bendawald's body-worn camera recording.

---

[27] As should be apparent by now, given that two of the alleged contacts at issue occurred outside of Caldwell, the government's claims that Mr. Bendawald policed "outside of his jurisdiction" are not as problematic as it suggests.  As a gang cop, Mr. Bendawald regularly worked with other law enforcement agencies to police criminals who operated throughout the Treasure Valley.
[28] BENDAWALD_004781.
[29] BENDAWALD_013026.

It is troubling that the government has repeated to the Court an allegation that is obviously false based on evidence it produced in discovery. Needless to say, false allegations are not material or sufficient, and the danger of unfair prejudice to Mr. Bendawald of presenting this evidence outweighs its non-existent probative value. Even if the conduct the government wishes to admit is Mr. Bendawald's alleged role in handling OAV7's complaint, any probative value (minimal, given that Mr. Bendawald is not alleged to have been involved in personally handling any other complaints) is substantially outweighed by the risk of unfair prejudice and confusing the jury by presenting evidence of a false complaint. OAV7's allegations cannot be admitted.

## CONCLUSION

For the foregoing reasons, Mr. Bendawald respectfully requests that the Court deny the government's Motion for an Order Permitting Admission of Evidence Pursuant to Federal Rules of Evidence 413 and 404(b). If the Court is not inclined to deny the government's motion on the briefs, Mr. Bendawald requests that the Court hold an evidentiary hearing.

DATED this 14th day of February, 2025.

NEVIN, BENJAMIN & McKAY LLP


 /s/ Debra Groberg
Debra Groberg

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of February 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Katherine L. Horwitz
United States Attorney's Office
khorwitz@usdoj.gov

/s/ Debra Groberg
Debra Groberg